**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────────

**LANDMARK VENTURES, INC.,**

                  **Petitioner,**

       **- against -**

**INSIGHTEC, LTD.,**

                **Respondent.**
────────────────────────────────────

**14 Civ. 0233 (JGK)**

<u>**OPINION AND ORDER**</u>

**JOHN G. KOELTL, District Judge:**

    This action arises out of a contract dispute between the petitioner, Landmark Ventures, Inc. ("Landmark"), and the respondent, InSightec, Ltd. ("InSightec").  Pursuant to the terms of the contract, the dispute was submitted to an arbitration governed by the Rules of Arbitration of the International Chamber of Commerce ("ICC") and presided over by Stephanie Cohen, Esq. (the "Arbitrator"), an independent arbitrator selected from the ICC's roster of arbitrators.

    On October 8, 2013, a final arbitration award ("Award") was issued in favor of InSightec.  Landmark has filed a petition to vacate the Award and InSightec has filed a cross-petition to confirm the Award.  For the reasons explained below, the petition to vacate the Award is denied, and the cross-petition to enforce the Award is granted.

**I.**

Unless otherwise indicated, the following facts are accepted as true for purposes of the pending petitions.

**A.**

InSightec is a corporation that is incorporated in and has its principal place of business in Israel; Landmark is a corporation that is incorporated in and has its principal place of business in New York State.  InSightec develops medical devices and Landmark provides financial advice and banking services.  Pet. to Vacate ¶¶ 3-6, Ex. 4 ("Award") ¶¶ 2-7.

On July 28, 2011, Landmark executed a letter of engagement ("Agreement") with InSightec to provide strategic banking and financial advisory services.  Schulman Decl. Ex. 3.  The Agreement provided that InSightec would retain Landmark to be "its exclusive financial advisor" for an exclusive engagement period of six months with respect to (1) an Offering, defined as "a best efforts private placement transaction . . . of any equity debt or convertible securities"; (2) a strategic partnership; or (3) a possible Sales Transaction, defined as "a sale or other disposition of a majority of the Company's assets or stock or a merger of the Company with another entity." Agreement § 1.

Landmark was to "pursue prospective strategic and/or financial investors and partners," provided that these prospective investors did "not include the Company's existing shareholders or their affiliates on the date hereof."  Agreement § 1.  The Agreement specified the fees to which Landmark was entitled for its services.  Agreement § 3.  For each qualified Strategic Partnership initiated during the exclusive engagement period or a specified Tail Period, Landmark was entitled to at least a minimum strategic partnership fee.  Agreement § 3(iii).

Section 10 provides that disputes under the Agreement are "governed by the laws of the State of New York," and contains a broad, mandatory arbitration clause providing that,

> All disputes arising out of or in connection with this Letter Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one arbitrator appointed in accordance with the said Rules.

Agreement § 10.


### B.

A dispute arose when GE Healthcare invested $27.5 million in InSightec.  Award ¶¶ 9, 23, 25.  At the time the Agreement was executed, GE Healthcare was an affiliate of GE, an InSightec shareholder.  Award ¶ 25.  Landmark asserted that InSightec owed it a "minimum strategic partnership fee" in the amount of $450,000, and that InSightec breached the Agreement when it

3

refused to pay Landmark what it was owed.  Award ¶¶ 32, 37.  The dispute turned on the proper interpretation of the Agreement. See Award ¶ 98.

On July 5, 2012, Landmark submitted a Request for Arbitration to the ICC to arbitrate the dispute pursuant to the Agreement.  Award ¶ 48.  The Secretary of the ICC determined that the arbitration had officially commenced on July 5, 2012. Award ¶ 48.  InSightec received Landmark's Request for Arbitration on August 5, 2012.  Award ¶ 49.

On December 20, 2012, after the parties failed to agree to nominate an arbitrator jointly, the ICC appointed the Arbitrator from the ICC roster to serve as the sole arbitrator presiding over the case pursuant to Article 13(3) of the ICC Rules. Schulman Decl. Ex. 4, pp. 3-4.

Attorneys for both parties in the arbitration practice before arbitral tribunals, and InSightec's lawyer Maya Steinitz is a member of the arbitration committee of the ICC and the roster of arbitrators for the ICC Court of Arbitration. She is a member of the ICC's Commission on Arbitration, and also serves on the Court of the ICC's Jerusalem Arbitration Center.  Pet. to Vacate, Ex. 7, ¶ 5.

When the Arbitrator was appointed, she completed an ICC Arbitrator Statement of Acceptance, Availability, Impartiality and Independence form.  In the space on the form to state

4

whether the Arbitrator had any potential conflict of interest to disclose, the Arbitrator checked the box indicating that she had "nothing to disclose."  Flynn Decl. Ex. A.

## C.

The Arbitrator, InSightec, and Landmark all signed the "terms of reference," outlining the procedural rules to be followed in the arbitration.  Schulman Decl. Ex. 4.  The terms of reference explained the location of the arbitration, applicable law, procedural rules, and listed five issues to be determined in the arbitration.

The terms of reference explained that, in accordance with the parties' Agreement, the arbitration hearing would occur in New York City, and would be governed by New York law.  Schulman Decl. Ex. 4, ¶¶ 6-8.  It further stated that the ICC Rules were the procedural rules that would govern the dispute.  Schulman Decl. Ex. 4, ¶ 9.  The terms of reference also explained that one of the issues in the arbitration was how costs should be fixed under Article 37 of the ICC Rules.  Schulman Decl. Ex. 4, ¶ 5.

Before the evidentiary hearing, the Arbitrator issued Procedural Order No. 1 that further explained the rules for discovery, set out procedural deadlines, and provided for each party to submit a statement of the case and statement in

opposition detailing their arguments.  Schulman Decl. Ex. 6 (as amended).

Because the ICC does not have any rules for taking evidence, the Order provided that discovery was to be governed by the IBA Rules on the Taking of Evidence in International Arbitration (2010) ("IBA Rules").  Schulman Decl. Ex. 6, ¶¶ 8, 11.  Each party was permitted to request documents and witness statements from the other as long as the requests were timely and complied with the IBA Rules.  Schulman Decl. Ex. 6, ¶¶ 8, 11.

Landmark submitted ten document requests to InSightec, most of which were broad requests for "all documents" of a given type.  Schulman Decl. Ex. 7, pp. 3-8 (tables summarizing orders).  The IBA Rules limit document requests to detailed specific requests and do not permit broad discovery requests. The Arbitrator explained that under Article 3(3) of the IBA Rules, a request to produce documents must, among other requirements, (1) be sufficient to identify them or include a description of a "narrow and specific requested category of Documents that are reasonably believed to exist" and (2) must include a statement that the documents are not within the requesting party's control and why that party believes the documents are in the other party's control.  Schulman Decl. Ex. 7, ¶¶ 8-11.  In the Order denying some of Landmark's document

requests, the Arbitrator explained that "[n]early all of [Landmark]'s requests fail[ed] to satisfy one or both of these standards."  Schulman Decl. Ex. 7, ¶ 10.

The Arbitrator denied six of Landmark's ten requests outright and two requests in part for failing to meet the IBA Rules.  Schulman Decl. Ex. 7, pp. 3-9.  The Arbitrator granted two requests because InSightec agreed to provide the information.  Schulman Decl. Ex. 7, pp. 3-9.  For example, in Request No. 5, Landmark requested a copy of the executed Agreement, which was already in Landmark's control because it had already submitted a copy for the record; InSightec objected on these grounds, but agreed to produce the document.  Schulman Decl. Ex. 7, p. 5.

Procedural Order No. 1 also included a procedural timetable which set out a list of deadlines for the proceeding.  Schulman Decl. Ex. 6, ¶ 16.  Deadlines were set for, among other things, submitting requests to produce and objections to those requests, resolving discovery disputes, submitting the parties' statement of the case and statement in opposition, and setting the dates for a pre-hearing conference and evidentiary hearing.  Schulman Decl. Ex. 6, ¶ 16.

The Order "directed [each party] to submit comprehensive written statements detailing the factual and legal basis for its claims or defenses," with "all documents relied upon" and

"witness statements for any fact or expert witness whose testimony is relied upon" attached to them.  Schulman Decl. Ex. 6, ¶ 7.

Landmark failed to submit witness statements by the deadline as ordered.  Schulman Decl. Ex. 9, ¶ 10.  In response, InSightec moved to preclude Landmark from introducing evidence that had not been submitted by the deadline.  Schulman Decl. Ex. 9, ¶ 3.  Landmark asserted that it failed to submit the witness statements because it misinterpreted the Order and that it had put forth a "good faith" effort to comply.  Schulman Decl. Ex. 9, ¶ 4.  The Arbitrator responded that Landmark did not point out any place where the Order was ambiguous and that even assuming that Landmark acted in good faith, "there [was] no reasonable basis for its belief" that it did not have to attach witness statements or documents on which it expected to rely. Schulman Decl. Ex. 9, ¶ 10.  The Arbitrator also noted that Landmark's non-compliance had led to "inefficiencies and wasted costs."  Schulman Decl. Ex. 9, ¶ 15.

However, despite finding that Landmark had failed to comply with the deadline, the Arbitrator extended the deadline to May 23, 2013 for Landmark to submit documents and witness statements.  Schulman Decl. Ex. 9, ¶ 16.  In doing so, the Arbitrator explained that any evidence submitted after that second deadline would be "subject to an adverse inference and/or

deemed inadmissible unless Landmark can show good cause why such evidence should be admitted and would not be unduly unfair or prejudicial to [InSightec]." Schulman Decl. Ex. 9, ¶ 16.

On the May 23, 2013 deadline, Landmark did not submit any expert witness statements. Schulman Decl. Ex. 10. Instead, Landmark submitted a request seeking a one week extension of the deadline for it to "engage" an expert witness and did not estimate when it might submit an expert witness statement to the Arbitrator. Id. Landmark did not explain whether there was "good cause" for failing to submit the witness statements or whether further delay "would not be unduly unfair or prejudicial" as it had been ordered to explain. Schulman Decl. Exs. 10, 11, ¶ 3. Citing the above, the Arbitrator denied Landmark's request for another extension. Schulman Decl. Ex. 11, ¶ 3.

**D.**

On July 23, 2013, an evidentiary hearing was held at Landmark's office in New York City. Schulman Decl. Ex. 13, ¶ 4. After the evidentiary hearing, pursuant to Procedural Order No. 8, Landmark submitted a post-hearing statement, InSightec submitted an opposition, and Landmark submitted a reply. After Landmark submitted its reply, InSightec submitted another letter by email discussing the adequacy of Landmark's response and

raising other arguments.  That same day Landmark sent an email asserting that InSightec's letter was an unauthorized surreply memorandum and requested that it be withdrawn or rejected in its entirety.  Schulman Decl. Ex. 15.  The following business day, the Arbitrator issued Procedural Order No. 9, finding that InSightec's letter was improper because InSightec sought "to re-argue its case."  Id.  The Order stated that InSightec's letter would be disregarded because it is "contrary to Procedural Order No. 8, which gives the last word to [Landmark], in accordance with an agreement made by the Parties prior to the hearing." Id.  The Arbitrator then closed the proceedings pursuant to Article 27 of the ICC Rules.  Schulman Decl. Ex. 15.

### E.

On October 8, 2013, the Arbitrator issued a 34-page written Award finding the contract was unambiguous and denying Landmark's claims in their entirety.  Award ¶ 174.

Both parties sought an award deciding who should bear the costs of the arbitration.  Award ¶ 150.  Landmark asserted it was entitled to the costs of the arbitration or, alternatively, that the costs should be divided equally.  Award ¶ 151. Landmark did not submit any evidence of the costs it incurred for the arbitration.  Award ¶ 152.  InSightec asserted it was entitled to attorney's fees and costs.  Award ¶ 158.  InSightec

submitted an affirmation of its Counsel to substantiate its request.  Award ¶ 158.

InSightec's Counsel affirmed that InSightec's "out of pocket expenses" totaled $42,832.61 and that the legal fees incurred while defending the arbitration proceeding totaled $231,421.55.  Award ¶ 160.  This amount included $1,537.50 in attorney's fees incurred in June 2012, which were incurred before the Request for Arbitration was filed on July 5, 2012, and which the Arbitrator found did not qualify as "costs of the arbitration."  Award ¶ 172(a).  InSightec reduced the fees it sought by 10% because its hourly total was calculated using multiple timekeepers and "there was invariably some overlap in the work."  Award ¶ 160.  The affirmation included a monthly summary of the work performed and a breakdown of the amount spent each month, total hours billed by each timekeeper, and a brief biography of each attorney seeking fees, their hourly rates, and their respective roles in the arbitration.  Award ¶ 161.  InSightec sought travel costs at economy-class airfare and minimized costs by having the arbitration proceeding at "Landmark's office rather than a neutral location."  Award ¶ 159.

Pursuant to Article 37(4) of the ICC rules, the Arbitrator found that it was appropriate for Landmark to pay its own legal fees and ordered Landmark to pay InSightec's attorney's fees and

11

costs.  Award ¶¶ 172, 174; <u>see generally</u> ¶¶ 148-74.  The Award
explains:

> Although the Arbitrator does not find that [Landmark]
> ever acted in bad faith during the arbitration, an
> otherwise straightforward contract dispute was
> unnecessarily complicated by [Landmark]'s repeated
> failures, without reasonable excuse, to comply with
> procedural orders such as the unambiguous direction
> that it submit a comprehensive pre-hearing statement
> of case accompanied by witness statements.

Award ¶ 165.  Notwithstanding the above, the Arbitrator
explained that it was not "reasonable to shift the amount
claimed by [InSightec] for legal fees—close to half the value of
[Landmark]'s claim—entirely to [Landmark] (even accounting for
inefficiencies and wasted costs attributable to [Landmark's]
conduct)," because, among other reasons, some of the requested
fees arose from work performed during June before the
Arbitration commenced and some of the fees were not properly
explained.  Award ¶ 172.  Therefore, the Arbitrator reduced the
amount of attorney's fees granted to InSightec by an additional
20%.  <u>Id.</u>  After this deduction, the Arbitrator ordered Landmark
to pay InSightec $25,000.00 to reimburse InSightec for the costs
InSightec had advanced to the ICC for the arbitration,
$166,565.88 for legal fees, and $17,832.61 for legal expenses.
Award ¶ 174.

**F.**

On November 7, 2013, Landmark filed a separate action in New York State Supreme Court against the ICC and against the Arbitrator, personally, asserting most of the claims it has asserted in this action.  That case was removed to federal court pursuant to 9 U.S.C. §§ 202 and 205 and 28 U.S.C. § 1446. The defendants have moved to dismiss that action and that motion is decided in a separate opinion.

On January 13, 2013, Landmark brought this action against InSightec to vacate the Award. The action is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "Convention").  InSightec filed a cross-petition to confirm the Award, for pre-judgment interest, and for attorney's fees incurred in this proceeding.

This Court has jurisdiction under the Convention, 9 U.S.C. § 203, and under 28 U.S.C. § 1332(a)(2) based on diversity of citizenship.

**II.**

This action arises under the Convention, codified in 9 U.S.C. § 202, et seq., because the agreement at issue is commercial and it involves a foreign party.  See also Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 391 (2d Cir. 2011).

13

The task for a party seeking to vacate an arbitration award is a formidable one.  The party challenging an arbitration award generally bears a heavy burden of proof, and courts generally will conduct only limited review of arbitration decisions.  See, e.g., Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp., 103 F.3d 9, 12 (2d Cir. 1997) ("Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." (alterations omitted)); Arbitration Between Space Sys./Loral, Inc. v. Yuzhnoye Design Office, 164 F. Supp. 2d 397, 403 (S.D.N.Y. 2001) ("[L]imited review of arbitration decisions is necessary both to effectuate the parties' agreement to submit their disputes to arbitration and to avoid costly and protracted litigation about issues the arbitrator[ has] already decided."); see also Giller v. Oracle USA, Inc., No. 11cv02456, 2012 WL 467323, at *3 (S.D.N.Y. Feb. 14, 2012), aff'd, 512 F. App'x 71 (2d Cir. 2013) (summary order), cert. denied, 134 S. Ct. 531 (2013).  Courts are "not at liberty to set aside an arbitration . . . award because of an arguable difference regarding the meaning or applicability of laws urged upon it."  Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 934 (2d Cir. 1986).

Under the Convention, the "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207; see Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 19 (2d Cir. 1997). Under Article V of the Convention, there are seven grounds for refusing to recognize or enforce an arbitral award, including "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties," and "recognition or enforcement of the award would be contrary to the public policy" of the country in which enforcement or recognition is sought. See id. at 19. In addition, the Convention contemplates "that the state in which, or under the law of which, the award is made, will be free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief." Id. at 23. Thus, Chapter I of the FAA, and all of its grounds, express and implied, for modification and vacatur of an arbitral award apply to Landmark's motion to vacate the award. Under 9 U.S.C. § 10, the express grounds for vacating an award are:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

An implied ground for vacating an arbitral award in the United States is manifest disregard of the law. See Schwartz v. Merrill Lynch & Co., 665 F.3d 444, 451-52 (2d Cir. 2011); see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 672 n.3 (2010).

In this case, Landmark argues that the Award should be vacated because the Arbitrator (1) engaged in misconduct, (2) demonstrated evident partiality, and (3) exceeded her powers by manifestly disregarding the law and awarding InSightec attorney's fees and costs. Landmark's arguments do not rise to the level necessary for vacating an arbitral award and are without merit.

**A.**

Landmark alleges that the Arbitrator is guilty of misconduct for her procedural rulings. Landmark contends that the Arbitrator's rulings on its document requests and her ruling

denying Landmark's motion for a second extension of the deadline to submit witness statements constitute arbitral misconduct.

Procedural rulings can only lead to vacating an award if the ruling denied the petitioner "fundamental fairness." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 107 (2d Cir. 2013) (citations omitted).  An arbitrator "is not required to hear all the evidence proffered by a party," but "must give each of the parties to a dispute an adequate opportunity to present its evidence and argument." Id. "Arbitrators have substantial discretion to admit or exclude evidence." Id.  An Arbitrator has discretion to limit discovery and may limit document requests to specific requests that are narrowly tailored to issues in the case.  Cf. Triomphe Partners, Inc. v. Realogy Corp., No. 10cv8248, 2011 WL 3586161, at *5 (S.D.N.Y. Aug. 15, 2011) on reconsideration in part on unrelated matter, No. 10cv8248, 2012 WL 266890 (S.D.N.Y. Jan. 30, 2012). Arbitrators "must be empowered to enforce procedural deadlines," and "[t]he time frames that arbitrators allow under approved schedules for discovery . . . deadlines [which are] binding on all parties, ordinarily are sufficient to provide them with adequate opportunity to present evidence and arguments." Id. (citation omitted).  Accordingly, "[f]ederal courts do not superintend arbitration proceedings.  Our review is restricted to determining whether the procedure was fundamentally unfair."

17

Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir.
1997) (citation omitted).  The Arbitrator's procedural rulings
in this case did not involve misconduct.

First, Landmark asserts that the Arbitrator committed
misconduct when she limited document requests to specific
requests narrowly tailored to the issues pursuant to the IBA
Rules.  Schulman Decl Ex. 6, ¶ 8.  This decision was well within
the Arbitrator's broad discretion to control discovery.
Landmark had "an adequate opportunity to present its evidence,"
but simply failed to take advantage of this opportunity by
failing to submit proper document requests.  Arbitrators are
empowered to enforce procedural requirements and to control
discovery, and the Arbitrator here did not commit misconduct by
denying Landmark's document requests.

Second, Landmark asserts that it was misconduct for the
Arbitrator to deny its motion for a second extension to the
deadline to submit expert witness statements.  The Arbitrator's
decision denying Landmark's request for a second extension was
well within her broad discretion to enforce deadlines.  See,
e.g., Global Scholarship Alliance v. Wyckoff Heights Med. Ctr.,
No. 09cv8193, 2010 WL 749839, at *2 (S.D.N.Y. Feb. 24, 2010)
("The Arbitrator's decision to exclude [the Claimant's] expert
witness testimony in light of Respondent's acknowledged failure
to comply with the terms of a Scheduling Order, was well within

her broad discretion to determine whether to hear evidence."
(internal quotations and citations omitted)).

After failing to meet one deadline without any reasonable
basis, the Arbitrator granted Landmark an extension to submit
expert witness statements noting that any evidence submitted
after that deadline "would be subject to an adverse inference
and/or deemed inadmissible unless Landmark can show good cause
why such evidence should be admitted and would not be unduly
unfair or prejudicial to [InSightec]."  Schulman Decl. Ex. 9, ¶
16.  Landmark did not submit any expert witness statements on
that deadline and requested another extension.  Schulman Decl.
Ex. 10.  The Arbitrator denied Landmark's request for another
extension because Landmark did not explain whether there was
"good cause" for failing to submit the witness statements or
whether further delay "would not be unduly unfair or
prejudicial" as it was ordered to do.  Schulman Decl. Exs. 10,
11, ¶ 3.

"[I]f the arbitrator[ makes] a factual and procedural
determination that under their governing rules proffered
evidence is untimely . . . absent evidence of misconduct that
determination is beyond judicial review."  Commercial Risk
Reinsurance Co. v. Sec. Ins. Co. of Hartford, 526 F. Supp. 2d
424, 430 (S.D.N.Y. 2007).  Here, neither party contends that
Landmark complied with the procedural rules of the arbitration;

Landmark repeatedly missed deadlines, filed improper, untimely requests even after being given a second chance to comply, and failed to follow Orders.  The Arbitrator was empowered to enforce the deadlines and did not commit misconduct by doing so.

Moreover, because the Arbitrator found the contract was unambiguous, extrinsic evidence would have been irrelevant. See Kolel Beth Yechiel Mechil of Tartikov, Inc., 729 F.3d at 107 (noting "the primary issue in the arbitration was one of contractual interpretation, which is a question of law and would not necessarily require reference to external evidence" (internal quotation marks omitted)). Therefore, the Arbitrator's denial of Landmark's discovery requests and refusal to grant a second extension for expert testimony, did not violate due process because the evidence would have been irrelevant.  See id. (explaining an arbitrator "is not required to hear all the evidence proffered by a party").

Landmark also asserts that the Arbitrator committed misconduct by considering an unauthorized surreply by InSightec before closing the proceedings.  Schulman Decl. Ex. 15.  This argument is contrary to fact.  After InSightec sent a letter responding to Landmark's reply motion, that same day Landmark sent an email asserting that InSightec's letter was an unauthorized surreply.  The following business day, the Arbitrator issued Procedural Order No. 9 stating that

"[InSightec's] letter . . . will be disregarded" because it violated Procedural Order No. 8, "which gives the last word to [Landmark], in accordance with an agreement made by the Parties prior to the hearing." <u>Id.</u>  The Arbitrator then closed the proceedings in accordance with Article 27 of the ICC Rules.  <u>Id.</u> The Arbitrator found the letter improper and made a ruling that it should be disregarded.  The Arbitrator's conduct was entirely proper and in no way rose to the level of misconduct.

Landmark's petition to vacate the Award due to the Arbitrator's alleged misconduct is therefore denied.

## B.

Landmark also seeks to vacate the Award due to the alleged evident partiality of the Arbitrator.  Landmark first argues that the Arbitrator's substantive orders—namely, granting "all" of InSightec's discovery requests while denying most of Landmark's requests; not granting Landmark a second extension to submit expert witness statements; and allegedly considering the surreply memorandum—support a conclusion that the Arbitrator was biased against Landmark.  A subjective disagreement with a substantive ruling cannot give rise to a finding of partiality. <u>See</u> <u>Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.</u>, 668 F.3d 60, 75 (2d Cir. 2012) ("We have repeatedly said that adverse rulings alone rarely evidence partiality,

21

[including when] those adverse rulings are made by arbitrators"). The petition contains no plausible factual allegations to support a claim of the Arbitrator's partiality. See Giller, 2012 WL 467323, at *8.

For the first time in reply, Landmark argues the Arbitrator was partial towards one of InSightec's attorneys because both were affiliated with the ICC and had arbitrated cases under the ICC's Rules.  Landmark contends that this was a conflict of interest, and that the ALJ had a duty to bring this "intimate relation" to the attention of the parties, which she failed to do.  This argument is rejected because "[a]n argument raised for the first time in reply could be rejected on that basis alone." Ramirez v. United States, No. 97cv7806, 1999 WL 980170, at *2 (S.D.N.Y. Oct. 27, 1999).

In any event, the argument has no merit.  Vacating an arbitration award based on an arbitrator's non-disclosure requires that the "arbitrator . . . knows of a material relationship with a party," fails to disclose it, and "a reasonable person, considering all the circumstances, would have to conclude that an arbitrator was partial to one side." Scandinavian Reinsurance Co., 668 F.3d at 72 (emphasis in original).  The Court of Appeals has "repeatedly cautioned that [it is] not quick to set aside the results of an arbitration because of an arbitrator's alleged failure to disclose

22

information." Id. (internal quotation marks omitted); but see
Commonwealth Coatings Corp. v. Continental Cas. Co., 393 U.S.
145 (1968) (arbitrator disqualified for failure to disclose
financial relationship with a party to the arbitration).

In this case, there is no suggestion that the Arbitrator
had any financial relationship with a party or with any of the
lawyers.  The fact that an arbitrator and one of the lawyers
serve in positions in an arbitration association or serve as
arbitrators in different cases under the auspices of that same
organization would not give the Arbitrator a conflict of
interest in the case at issue.  For example, in Matter of Andros
Compania Maritima, S.A. (Marc Rich & Co., A.G.), one of the
arbitrators on an arbitral panel and the President of the
corporation who operated the vessel that was the subject of the
dispute both served as arbitrators for the Society of Maritime
Arbitrators.  579 F.2d 691, 701 (2d Cir. 1978).  They had served
on nineteen arbitral panels together, and, in the past year, had
met for lunch on nine occasions regarding the Society's affairs.
See id. at 696-97, 701.  They both attended events associated
with their membership in the Society of Maritime Arbitrators and
had run into each other at Maritime Law Association events.  See
id. at 696, 701.  Besides this "professional" relationship, they
had no financial relation and the arbitrator had no stake in the
outcome of the proceedings.  See id. at 701.  The Court of

23

Appeals found this "professional" relationship was not the type of relationship an arbitrator was required to disclose and it did not give rise to a conflict of interest evidencing partiality.  See id. at 701-02, 704; see also Lucent Technologies Inc. v. Tatung Co., 379 F.3d 24, 28-30 (2d Cir. 2004) (finding no conflict of interest when over ten years before an arbitrator was a co-owner of an airplane with another arbitrator which he failed to disclose and had served as an expert witness for one of the parties which he only disclosed to the A.A.A. but not to the parties); Scandinavian Reinsurance Co., 668 F.3d at 73 (finding no evident partiality when two arbitrators in a multi-arbitrator panel were both simultaneously serving on a different arbitration panel on a similar matter and may have received confidential information from this association).

The "professional" relationship the Court of Appeals found to be insufficient to establish evident partiality in Andros Compania Maritima was far more substantial than anything Landmark has alleged.  There is no evidence that InSightec's attorney and the Arbitrator served on an arbitration panel together, attended similar ICC events or meetings, or even knew each other at all.  All that is alleged is that they were both affiliated with the ICC in various capacities.  This connection

24

is so attenuated that Landmark's argument can only be described as frivolous.

Futhermore, during oral argument on the current motion, the petitioner conceded that there is no evidence that suggests that there is any sort of relationship between the Arbitrator and InSightec's attorney.  <u>See</u> Tr. of Oral Arg. at 10-12.  The Arbitrator plainly had no obligation to disclose that a lawyer with whom the Arbitrator had no relation served in various capacities for the ICC.  The petitioner has presented no information that would suggest that the Arbitrator had any conflict of interest—or even the appearance of one—that should have been disclosed or that would have disqualified the Arbitrator.

Landmark's petition to vacate the Award due to the Arbitrator's alleged partiality is therefore denied.

## C.

Landmark next seeks to vacate the Award because it asserts that the Arbitrator manifestly disregarded the law.  Under the manifest disregard standard, an arbitration award may be vacated if an arbitrator is "fully aware of the existence of a clearly defined governing legal principle, but refuse[s] to apply it, in effect, ignoring it."  <u>Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.</u>, 548 F.3d 85, 96 (2d Cir. 2008), <u>rev'd on other grounds</u>,

559 U.S. 662 (2010); see also Schwartz, 665 F.3d at 451–52
(confirming the continued validity of the "manifest disregard"
standard).  The manifest disregard standard is "severely
limited, highly deferential, and confined to those exceedingly
rare instances of egregious impropriety on the part of the
arbitrator[]."  Stolt-Nielsen, 548 F.3d at 95 (citation and
internal quotation marks omitted).

A party objecting to an arbitration award on the grounds of
manifest disregard of the law must establish that the law
allegedly ignored was clear, improperly applied, and led to an
erroneous outcome, and that the arbitrator not only knew of the
law but intentionally disregarded it.  See T.Co Metals, LLC v.
Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010).
"[An] award should be enforced, despite a court's disagreement
with it on the merits, if there is a barely colorable
justification for the outcome reached."  Id. (citation and
internal quotation marks omitted); see also Ecopetrol S.A. v.
Offshore Exploration & Prod. LLC, No. 14cv529, 2014 WL 4449799,
at *14 (S.D.N.Y. Sept. 10, 2014).  Any error must be "plainly
evident from the arbitration record," Duferco Int'l Steel
Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir.
2003), such that it is "obvious and capable of being readily and
instantly perceived by the average person qualified to serve as
an arbitrator," Bobker, 808 F.2d at 933; see also Hamilton v.

26

Sirius Satellite Radio Inc., 375 F. Supp. 2d 269, 274 (S.D.N.Y. 2005).

"The arbitrator's factual findings and contractual interpretation are not subject to judicial challenge, particularly on our limited review of whether the arbitrator manifestly disregarded the law." Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 214 (2d Cir. 2002) (Sotomayor, J.); cf. Hardy v. Walsh Manning Sec., L.L.C., 341 F.3d 126, 130, 133 (2d Cir. 2003) (vacating an arbitration award where—unlike the present case—the legal issue the arbitrator interpreted was not contested by the parties and "no reading of the facts [could] support the legal conclusion" the arbitrator reached).

Landmark's argument that the Arbitrator manifestly disregarded the law is wholly without merit.  Nowhere does Landmark identify a principle of law that the Arbitrator allegedly understood and ignored, or even misapplied.  See Wedbush Morgan Sec., Inc. v. Robert W. Baird & Co., 320 F. Supp. 2d 123, 127 (S.D.N.Y. 2004).

Landmark asks this Court to vacate the Award because the Arbitrator's interpretation of the parties' contract was incorrect.[1]  However, all the Arbitrator did was interpret a

---

[1] For completeness, it should be noted that while the reasonableness of the Arbitrator's contract interpretation is not subject to review, the Arbitrator reached a wholly

contract, and disputes over contractual interpretation do not rise to the level of manifest disregard of the law.  See, e.g., Yusuf Ahmed Alghanim & Sons, 126 F.3d at 25 ("Interpretation of . . . contract terms is within the province of the arbitrator and will not be overruled simply because we disagree with that interpretation."); see also, e.g., T.Co Metals, LLC, 592 F.3d at 339 ("With respect to contract interpretation, this standard essentially bars review of whether an arbitrator misconstrued a contract."); Sempra Energy v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., No. 06cv6107, 2006 WL 3147155, at *2 (S.D.N.Y. Oct. 31, 2006) ("[M]isapplication of rules of contract interpretation does not rise to the stature of a manifest disregard of law") (internal alterations and quotation marks omitted).  This is true because the manifest disregard standard is meant to protect against an arbitrator's willful disregard of clear law that is brought to the attention of the arbitrator.  When an arbitrator is construing a contract, it could be said at most that the arbitrator is wrong, and courts are not to second guess arbitrators.  Such claims do not constitute manifest disregard of the law, see I/S Stavborg (O. H. Meling, Manager) v. Nat'l Metal Converters, Inc., 500 F.2d 424, 431-32 (2d Cir. 1974); Sempra Energy, 2006 WL 3147155, at *2; see also Giller,

---

reasonable interpretation of the Agreement under New York Law which governs the contract.

2012 WL 467323, at *6.   The Award cannot be vacated on this basis.

## D.

Landmark contends that the Award should be vacated because the Arbitrator "exceeded [her] powers," presumably under Section 10(a)(4) of the Federal Arbitration Act, by awarding InSightec around $200,000 in attorney's fees and costs.   The Court of Appeals narrowly construes a court's ability to vacate an award when an arbitrator allegedly exceeded her powers under Section 10(a)(4).   See Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d 255, 262 (2d Cir. 2003).   "When a party seeks to vacate an arbitration award under Section 10(a)(4), the inquiry looks only to whether the arbitrator had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, and does not consider whether the arbitrator decided the issue correctly."   Thule AB v. Advanced Accessory Holding Corp., No. 09cv91, 2009 WL 928307, at *2 (S.D.N.Y. Apr. 2, 2009) (citation and internal quotation marks omitted); see also DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 824 (2d Cir. 1997).

When seeking to vacate an arbitration award under Section 10(a)(4), the only question for the Court is "whether the arbitrator[] acted within the scope of [her] authority, or

whether the arbitral award is merely the arbitrator['s] own brand of justice." Banco de Seguros, 344 F.3d at 262 (citation and internal quotation marks omitted); see also Ecopetrol S.A., 2014 WL 4449799, at *10.

The Agreement provided that any disputes would be governed by New York Law and settled under the ICC Rules.  Agreement § 10.  The Arbitrator's authority to award attorney's fees and costs was made clear from the outset in the Terms of Reference, which explained that one of the issues to be determined in the arbitration was how the costs should be fixed "under Article 37 of the Rules."  Schulman Decl. Ex. 4, ¶ 5.  Article 37 of the ICC Rules authorizes the Arbitrator to award costs, including attorney's fees.  See ICC Rules Art. 37, Schulman Decl. Ex. 18. Both Landmark and InSightec argued how attorney's fees and costs should be allocated.  Award ¶ 150.  Landmark argued that it should be awarded the costs of the arbitration or that they should be borne equally.  It did not question the ability of the Arbitrator to award such costs.  Award ¶ 151.  Accordingly, by contract, the Arbitrator had clear authority to award attorney's fees and costs, and was acting within the scope of this authority when she awarded to InSightec most of the fees they requested.

Landmark analogizes the award of attorney's fees and costs to punitive damages, and it asserts that an award of such

damages is against public policy in New York.  In <u>Synergy Gas
Co. v. Sasso</u>, the Court of Appeals rejected a nearly identical
argument.  853 F.2d 59, 66 (2d Cir. 1988) (noting that an
explicit award of attorney's fees, "even if it is very liberal,
does not necessarily constitute the imposition of 'unlawful'
punitive damages." );  <u>see also</u> <u>Nat'l Union Fire Ins. Co. of
Pittsburgh, Pa. v. Odyssey Am. Reinsurance Corp.</u>, No. 05cv7539,
2009 WL 4059183, at *6 (S.D.N.Y. Nov. 18, 2009) (finding that
attorney's fees awarded in an arbitration governed by New York
law were not punitive damages).

    In this case, the Arbitrator awarded InSightec attorney's
fees and costs, which Landmark argues are punitive damages that
exceeded the Arbitrator's scope of authority.  However, as in
<u>Synergy</u>, the attorney's fees in this case were just that—
attorney's fees—and not punitive damages.  In the Award the fees
were discussed as costs and were never characterized as punitive
damages.  Moreover, this case is a stronger case for the award
of attorney's fees than <u>Synergy</u>, because the parties' Agreement
incorporated Article 37 of the ICC Rules by reference, which
expressly grants the Arbitrator authority to award attorney's
fees and costs. The Arbitrator was not required to find that
Landmark was acting in bad faith as would be required for an
award of punitive damages.

Landmark also argues that the amount of attorney's fees the
Arbitrator awarded was unsubstantiated.  Landmark's argument
regarding the correctness of the amount of the Arbitrator's
award of attorney's fees is misplaced.  The "erroneous
application of rules of law is not a ground for vacating an
arbitrator's award, nor is the fact that an arbitrator
erroneously decided the facts."  Siegel v. Titan Indus. Corp.,
779 F.2d 891, 892-93 (2d Cir. 1985) (citations omitted); see
Bobker, 808 F.2d at 933-34.  An arbitration award must be
confirmed if there is "even a barely colorable justification for
the outcome reached."  Andros Compania Maritima S.A., 579 F.2d
at 703-04; see also Giller, 2012 WL 467323, at *4.

In any event, the argument is without merit.  Landmark
asserts that the Arbitrator granted attorney's fees and costs
for a period before the arbitration commenced.  This argument is
incorrect.  The Award did not grant the attorney's fees and
costs that InSightec requested for June 2012; the Arbitrator
explained that $1,537.50 of the requested fees were attributable
to work performed in June 2012 and were excluded by the 20%
reduction to the award.  Award ¶ 172(a).  Granting fees
beginning in July 2012 did not exceed the Arbitrator's powers
and was not a manifest disregard of the law.[2]

---

[2] It is also useful to note that the award of attorney's fees was
reasonable.  InSightec mitigated its costs and reduced its fees

Landmark objects that it did not unreasonably prolong the proceedings and that the Arbitrator erred by finding that it did so when calculating the award of attorney's fees and costs. However, it was reasonable for the Arbitrator to find that Landmark unreasonably prolonged the proceedings.  Landmark resisted the motion to dismiss which directly resulted in the discovery disagreements and prevented the contract from initially being interpreted based on its own terms.  Landmark also missed a number of deadlines—such as the deadline to submit witness statements—and made overly broad discovery requests violating the arbitration's stated procedural rules.

Landmark's motion to vacate the Award is denied.


**III.**

InSightec cross-petitions to confirm the Award.  In cases under the Convention, any party to an arbitration may apply to any court with jurisdiction for an order confirming the award. See 9 U.S.C. § 207.  The Court shall confirm the award unless it finds a grounds for refusal, as discussed above.  Id.  There is

---

by 10% for possible overlap in work.  Then, after scrutinizing the total amount of InSightec's attorney's fees, the Arbitrator concluded that they were too high, noting they were "close to half of the value of [Landmark's] claim" and further reduced the fees by 20% so as not to charge Landmark for the legal fees that accrued before the arbitration commenced or for the vague fees of InSightec's General Counsel.  Schulman Decl. Ex. 1, ¶ 172.

no ground specified in the Convention or under domestic law to justify that this Award not be confirmed.  The reasons Landmark had stated to vacate the Award have no merit, and Landmark has not made any further showing in reply as to why the Award should not be confirmed.  Accordingly, InSightec's cross-petition to confirm the Award is granted.  The award requires Landmark to pay $25,000 to reimburse InSightec for the Arbitrator's fees and expenses, $17,382.61 for InSightec's legal expenses, and $166,565.88 for InSightec's legal fees, for a total of $208,948.49. This Award will be confirmed.

## IV.

InSightec also cross-petitions for pre-judgment interest. While it is in the court's discretion to determine whether to award pre-judgment interest in an action to confirm an arbitration award, there is a general "presumption in favor of prejudgment interest." Waterside Ocean Navigation Co. v. Int'l Navigation, Ltd., 737 F.2d 150, 154 (2d Cir. 1984); N.Y.C. Dist. Council of Carpenters v. Gen-Cap Indus., Inc., No. 11cv8425, 2012 WL 2958265, at *3-4 (S.D.N.Y. July 20, 2012).  Landmark has not made any colorable argument why this presumption should not be followed.

Although determining the interest rate is also within the court's discretion, the "common practice among courts within the

Second Circuit is to grant interest at a rate of nine percent per annum-which is the rate of prejudgment interest under New York State law, N.Y. C.P.L.R. §§ 5001-5004-from the time of the award to the date of the judgment confirming the award." Id.; Dist. Council 1707 v. Ass'n of Black Social Workers Day Care, No. 09cv5773, 2010 WL 1049617, at *3 (S.D.N.Y. Mar. 22, 2010) (awarding pre-judgment interest at a rate of nine percent from the date of the arbitration award to the date of judgment); see also 1199/SEIU United Healthcare Workers E. v. S. Bronx Mental Health Council, Inc., No. 13cv2608, 2014 WL 840965, at *8 (S.D.N.Y. Mar. 4, 2014). In this diversity of citizenship case, this amount is particularly appropriate because the parties agreed that any disputes would be governed by New York State Law.

Accordingly, InSightec's cross-petition for pre-judgment interest is granted and Landmark is ordered to pay pre-judgment interest to InSightec (at the rate of 9% per annum) beginning October 8, 2013, the date of the Award, until judgment is entered in this Case.

**V.**

InSightec also cross-petitions for an award of attorney's fees and costs incurred in defending this action and for making the cross-petition to confirm the Award because it asserts that

35

Landmark has made its arguments in bad faith.   "[Courts] have the power to award attorney['s] fees to a successful litigant when his opponent has commenced or conducted an action in bad faith, vexatiously, wantonly, or for oppressive reasons."   Dow Chem. Pac. Ltd. v. Rascator Mar. S.A., 782 F.2d 329, 344 (2d Cir. 1986) (citations and internal quotation marks omitted). However, the Court of Appeals has "declined to uphold awards under the bad-faith exception absent . . . clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes."   Id.   (citations and internal quotation marks omitted).

The Arbitrator found that Landmark had not acted in bad faith.   Even if its papers did not provide a legal framework or cite relevant legal authorities as InSightec asserts, Landmark had the right to seek to vacate the Award and the petition was not brought in bad faith.   This is not a case where Landmark simply failed to abide by the Award.   See id. at 345.   Quite the opposite, Landmark attempted to vacate the Award, which it had a right to do even if its arguments were unsuccessful.   See also Seed Holdings, Inc. v. Jiffy Intern. AS, 5 F. Supp. 3d 565, 579 (S.D.N.Y. 2014).   Accordingly, InSightec's motion for attorney's fees and costs is denied.

## CONCLUSION

The Court has considered all the remaining arguments of the parties.  To the extent not specifically addressed above, they are either moot or without merit.  For the foregoing reasons, Landmark's petition to vacate the Award is **denied**.

InSightec's cross-petition to confirm the Award is **granted**.

InSightec's cross-petition for pre-judgment interest is **granted**.

InSightec's cross-petition for attorney's fees incurred in this proceeding is **denied**.  **The Clerk is directed to enter a judgment in favor of the respondent in the total amount of $208,948.49, together with pre-judgment interest at the rate of 9% from October 8, 2013 to the date judgment is entered.  The Clerk is also directed to close all pending motions and to close this case.**

SO ORDERED.

Dated:     New York, New York
           November 25, 2014             _____/s/_____
                                             John G. Koeltl
                                       United States District Judge